## The Merchants' Despatch Transportation Co.

### *v.*

### Jeremiah Bolles.

1. Carrier—*where a contract limiting liability extends to each connecting carrier.* It is only where the contract is for through transportation, that each connecting carrier will be entitled to the benefits and exemptions of the contract between the shipper and the first carrier.

2.   But where a railway company, having printed blanks for receipts for transporting goods over its road, and by other companies, to one place, received goods to be carried to a different place, and at its terminus to be delivered to a different company, receipted for the goods, and, without erasing the names of the other companies, used words of exemption from liability, they being, "between the shipper and the above named companies:" *Held*, that the company receiving the goods from the railway company not being one of "the above named companies," could not take the benefit of the exemptions in the receipt given.

3.   SAME—*liability does not cease until goods are delivered to next carrier in the line of transportation.* Where a carrier receives goods for transportation marked to a place beyond the terminus of its line, without any special contract, its liability as an insurer will continue until it delivers them to a connecting carrier.   If burned in its warehouse before such delivery, it will be liable for their value.

4.   SAME—*failure to disclose value of goods.*   If the shipper is not guilty of any improper concealment of the contents of boxes shipped, or their value, or other improper conduct, it is the duty of the carrier to inquire as to the nature and value of the goods shipped; and if it does not make any such inquiry, and there is no improper conduct on the part of the shipper, it can not escape liability for loss.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action on the case, by the appellee against the appellant, to recover the value of lost goods which came into the possession of the defendant as a carrier.   The facts of the case appear in the opinion.

Messrs. SMALL & MOORE, for the appellant.

Messrs. TRUMBULL, CHURCH & TRUMBULL, for the appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The principal question in this case is, whether defendant is entitled to the benefit of the contract made by plaintiff with the Norwich and Worcester Railroad Company, and the exemptions from liability secured by it.   Under the facts proven, we think it is not.

It is stipulated, defendant received the boxes containing plaintiff's goods, from the railroad company, at Worcester,

Massachusetts, directed to plaintiff, at Grand Junction, Iowa; that the defendant company was and still is a common carrier of merchandise for hire, and that all further evidence on the above points was waived.

It appears, from the evidence, the goods were shipped by plaintiff from Danielsonville, Connecticut, by the Norwich and Worcester Railroad Company, to Worcester, there to be delivered to defendant. When plaintiff delivered his goods, he received from the railroad company a receipt for the same, on the margin of which was written, under marks and numbers, "Eight boxes, 1919 lbs., *via* Merchants' Despatch from Worcester." The blank used was such as was usual in receipting for goods to be sent to New York by the railroad company, to Norwich, Allyn's Point, or New London, and thence to New York, by steam vessels of the Norwich and New York Transportation Company. Although many of the special conditions and limitations as to the liability of the carrier, therein written, could have no possible application to plaintiff's goods, they were not erased. His goods were to go in another direction, and not through the hands of the transportation companies named. The exemptions from liability were all, by the express terms used in the bill of lading, between the "shipper of the merchandise and the above transportation companies," that is, between plaintiff and the transportation companies named.

One of the transportation companies named was a carrier by steam vessels. Defendant was, in no just sense, one of the "above named transportation companies," and certainly the limitations therein contained were not in the contemplation of the parties when the bill of lading was executed. Hence there was no express contract between plaintiff and the first carrier, of which defendant was entitled to the benefit. Plaintiff had simply contracted with the railroad company to carry his goods to Worcester, and there deliver them to defendant. Whatever limitations of the carrier's liability were contained in the receipt, if any were in fact made and assented to by the shipper, were specifically with the railroad company, and there is no authority for extending the exemptions, by construction, to

other carriers.   Nor is there any authority for the proposition that the railroad company could contract, on behalf of the shipper, with defendant, to carry the goods on the same terms and under the same limitations it had received them, under a special contract with plaintiff.   Its duty was, to safely carry the goods to Worcester, and deliver them to defendant.   When that duty was done, it had performed its whole duty under the bill of lading in evidence.

It is only where the contract is for through transportation, that each connecting carrier will be entitled to the benefits and exemptions of the contract between the shipper and the first carrier.   The carrier upon whom the loss falls is to be regarded as acting under the contract made with the first carrier, and can claim the benefits of any exemption from liability in its favor, had the suit been brought against it.   *Magee* v. *Camden and Amboy Railroad Co.* 45 N. Y. 514; *Babcock* v. *Lake Shore and Michigan Southern Railroad Co.* 49 N. Y. 491; *The Ætna Ins. Co.* v. *Wheeler et al.* 49 N. Y. 616.

But the bill of lading in this case could never have been intended by the parties to it as a contract for through transportation.   On its face it was expressly limited to companies of which defendant was not one.   The undertaking of the first carrier was nothing more than to carry the goods to Worcester and deliver them to defendant.   When defendant received the goods at Worcester, its liability was that of a common carrier, unaffected by anything contained in the contract between the shipper and the first carrier.   Its obligation was that of an insurer, unrestricted by any special contract with the shipper, and such liability continued until it should deliver the goods to a connecting carrier at Chicago.

The performance of its duty in that regard could not be excused by anything "not occasioned by the act of God or the public enemy."   The goods were destroyed by fire while in the hands of defendant.   It makes no difference the goods may have been in defendant's warehouse.   As we have seen, the liability of common carrier rested upon defendant until it

should deliver the goods to another carrier, which was never done.

The point is made that plaintiff ought to have disclosed to the carrier the nature and value of the articles he was about to ship. The boxes, in fact, contained wearing apparel of plaintiff and his wife, and household goods, of very considerable value. No information was given the first carrier, or to defendant, relative to the contents of boxes or the value of the goods, but, under the authority of *Carrow* v. *Mich. Cent. Railroad Co.* Sept. T. 1874, the law cast the duty of inquiry upon the carrier, unless the shipper had been guilty of improper concealment. There is no evidence of improper conduct on the part of plaintiff, and nothing is shown that would relieve defendant of its duty to make inquiry as to the nature and value of the contents of the packages it was about to receive, or be responsible for the full value.

It is no doubt true the articles lost, as shown by the list, was a most remarkable collection, but we can not undertake to say, as a matter of law, plaintiff and wife did not have them. Whether they would invest so much money in such articles, is a matter of taste. The value of the goods lost was a question of fact for the court, and treating its finding as we would the verdict of a jury, we see no reason that would justify a reversal of the judgment.

The judgment must be affirmed.

*Judgment affirmed.*