MERCHANTS' DISPATCH TRANSPORTATION COMPANY *v.* BLOCH BROTHERS.

(*Nashville.*　February 18th, 1888.)

1. COMMON CARRIERS. *Who are. Transportation companies.*

A transportation company, *not owning or controlling any means of conveyance itself,* but engaging *on its own behalf* in the business of transporting goods through the agency and over the lines of other carriers of its own selection and employment, is a common carrier, and subject to all the responsibilities attaching to that character.

Cases cited: 3 Colo., 280; 45 Iowa, 470; 47 Iowa, 229, 247, 262; 80 Ill., 473; 89 Ill., 43, 152.

2. SAME. *Sub-carriers are agents of the transportation company.*

Sub-carriers employed by such company in the course of its business are *its* agents, and not agents of the shippers, or consignees.

3. SAME. *Contract exempting from liability for agents' acts.*

A stipulation in its bills of lading exempting such company from responsibility for damage or loss of goods occasioned by the default of its agents—the sub-carriers—is contrary to public policy, and void.

Transportation Company *v.* Bloch Brothers.

Cases cited and approved: Coward *v.* Railroad, 16 Lea, 225; Dillard *v.* Railroad, 2 Lea, 288; Marr *v.* Telegraph Co., 85 Tenn., 529; 17 Wall., 357-384; 97 Mass., 126; 93 U. S., 181-183; 34 Am. Rep., 197; 93 Ill., 523; 15 Minn., 270; 63 Pa. St., 14.

Cited and distinguished: Railroad *v.* Campbell, 7 Heis., 253; Railroad *v.* Rogers, 6 Heis., 143; Railroad *v.* McElwee, 6 Heis., 208; Railroad *v.* Weaver, 9 Lea, 38; Railroad *v.* Brumley, 5 Lea, 401; Dillard *v.* Railroad, 2 Lea, 288; Railroad *v.* Holloway, 9 Bax., 188; 6 How., 344.

4. SAME. *Burden of proof. Loss.*

Where goods in custody of a carrier or his agents are lost or damaged, the presumption of law is that it occurred through his default, and the burden is on him to prove that the loss or damage arose from a cause for which he was not responsible.

Cases cited and approved: Railroad *v.* Holloway, 9 Bax., 188; Dillard *v.* Railroad, 2 Lea, 296; 63 Pa. St., 14.

5. SAME. *Shipper's assent to bill of lading presumed.*

From shipper's acceptance of bill of lading without objection, it will be presumed, *prima facie,* that he knew its contents, and assented to its stipulations in favor of the carrier.

Cases cited and approved: Dillard *v.* Railroad, 2 Lea, 288; Railroad *v.* Brumley, 5 Lea, 404; Marr *v.* Telegraph Co., 85 Tenn., 430.

6. SUPREME COURT PRACTICE. *No reversal for immaterial error. Erroneous charge.*

It is error for the Court to charge that the burden is upon a common carrier to prove the shipper's knowledge of and assent to the stipulations of a bill of lading which he has accepted without objection; but such error is not material where the stipulation to which the charge applied was void.

Cases cited and approved: Myers *v.* Bank, 3 Head, 331; Redmond *v.* Bowles, 5 Sneed, 547; Patterson *v.* Head, 1 Lea, 664.

---

FROM DAVIDSON.

---

Appeal in error from the Circuit Court of Davidson County. FRANK T. REID, J.

---

---

Action by shipper against carrier for value of lost goods. Judgment for plaintiff. Defendant appealed.

SMITH & ALLISON for Merchants' Dispatch Transportation Company.

RICE & BELL for Bloch Bros.

CALDWELL, J.   This action was brought in the Circuit Court of Davidson County by Bloch Bros. against the Merchants' Dispatch Transportation Co., as a common carrier, to recover the value of a certain case of merchandise. Verdict and judgment were for the plaintiffs, and the defendant has appealed in error.

The goods were received by the defendant in the city of New York, under contract to deliver them to the plaintiffs at Clarksville, Tenn., for a stipulated sum.   They were transported to Louisville, Ky., over several lines of railroad, in a car belonging to the defendant, and at that point they were delivered to the Louisville & Nashville Railroad Co. for transportation to point of destination. The goods were never delivered at Clarksville, but were lost by the Louisville & Nashville Co., in some manner, and at some time and place not shown.

The shipment was made under the following receipt and bill of lading:

"NEW YORK, 'March 18th, 1882.

"Received from E. S. Jaffroy & Co., in apparent good order, the following package, marked as in the margin, viz.:

| 282.<br>Bloch Bros.,<br>Clarksville, Tenn. | One case mdse. |

"Bill of lading from New York to Clarksville; if first-class goods, 96 cts. per 100 lbs.

"To be forwarded to Clarksville under the following conditions:

"It being expressly understood and agreed that, in consideration of issuing this through bill of lading and guaranteeing a through rate, the Merchants' Dispatch Transportation Company reserves the right to forward said goods by any railroad line between point of shipment and destination.

\*    \*    \* ·    \*    \*    \*    \*    \*    \*

"It is further stipulated and· agreed that, in case of any loss, detriment, or damage done to or sustained by any of the property herein receipted for, during such transportation, whereby any legal liability or responsibility shall or may be incurred, that company alone shall be held answerable therefor in whose actual custody the same may be at the happening thereof.    \*    \*    \*    \*    \*

"(Signed)    W. GEAGEN, *Agent.*"

The contention of the defendant in the Court below was, that these stipulations in the bill of

lading relieved it from liability for the loss of plaintiffs' goods, and the charge of the Trial Judge with respect thereto is now assailed as erroneous.

The Court charged that the latter of these stipulations was "rendered void" by the former; that by the former, reserving to the defendant "the right to forward said goods by any railroad line between point of shipment and destination," the defendant made such railroad lines its agents, and that "the law, on grounds of public policy, would not allow it to stipulate exemption from liability for the consequences of the negligence of its agents, or their failure to do their duty."

This instruction properly treats the defendant as a common carrier. The duties which it undertakes, and which it holds itself out to the public as willing to undertake and perform, give it that character. In very many cases it has been expressly adjudged to be a common carrier, and in others such has been assumed to be its character without a discussion of the question. We cite a few of these cases: *Merchants' Dispatch Transportation Co.* v. *Comforth,* 3 Colo., 280 (25 Am. R., 757); 45 Iowa, 470; 47 Iowa, 229; *Ib.,* 247; *Ib.,* 262; 80 Ill., 473; 89 Ill., 43; *Ib.,* 152.

The text writers say that dispatch companies are common carriers, and class them with express companies because of the many points of similarity in their business, and the fact that they alike generally use the vehicles of others in the transporta-

tion of freight.   Lawson on Contracts of Carriers, Sec. 233;  Hutchinson on Carriers, Sec. 72.

No law is more familiar in England or America than that which binds the common carrier to safely deliver to the consignee goods intrusted to it for transportation, unless prevented from so doing by the act of God or the public enemy.   But in the last half of a century it has become equally well settled that the common law liability of a common carrier may be *limited in its extent* by express contract for that purpose.

This right of the carrier to limit its responsibility has been recognized by the Supreme Court of the United States since the decision by that Court in 1847 of the case of *The New Jersey Steam Navigation Company* v. *The Merchants' Bank of Boston* (6 Howard, 344), and, so far as we are informed, it is now upheld in every State of the Union.   To be valid, however, the limitation must in all cases be reasonable; and, to be reasonable, it must not stipulate for exemption from liability for the consequences of the negligence of the carrier, its servants, or agents.   *Railroad Company* v. *Lockwood*, 17 Wallace, 357–384; *Coward* v. *Railroad Company*, 16 Lea, 225; *Dillard* v. *Railroad Company*, 2 Lea, 288; *Marr* v. *W. U. Telegraph Company*, 85 Tenn. (1 Pickle), 529.

In the case before us the defendant insists that, by the stipulation in the bill of lading, it is relieved from responsibility for the loss of plaintiffs' goods.   We have already seen that the defendant

in the bill of lading first reserved to itself the right of selecting the particular lines of railroad over which it should transport the goods, and left the shippers or owners no choice or discretion in that matter. This reservation, the Trial Judge told the jury, constituted such railroad lines, when selected, the agents of the defendant.

Following this is the other stipulation that *the company alone* upon whose line the goods might be lost or injured should be liable therefor. This the Trial Judge told the jury was invalid, because the purpose of it was to exempt the defendant from liability for the negligence of those agents.

If the first of these two propositions laid down by the Trial Judge be true, the other would seem to follow—that is to say, if the railroad lines over which the goods were transported were the agents of the defendant, then its stipulation against its responsibility for the negligence of those agents would be invalid; for it has been seen that a common carrier cannot lawfully contract against the consequences of its own negligence, and, upon familiar principles, it can no more contract against the consequences of the negligence of its agents, because their negligence is in law its negligence.

The contract of shipment was made by the defendant in its own behalf for the whole route, and not on behalf of others, or for a part of the route only. For a specified sum, to be paid to it for the whole service, the defendant promised through transportation from New York to Clarks-

ville, receiving the goods in its own name at point of shipment and binding itself to deliver them at point of destination. It did not own, or claim to own, a single line of railroad, though several were to be used in the performance of its contract. It was compelled to rely upon others for the carriage of its freight; and for its own benefit, and not for the benefit of the shippers or consignees, it reserved to itself the selection of the lines it would use, the reservation necessarily embracing the · privilege on the part of the defendant of making its own arrangements, as to terms, with such lines, and carrying with it the duty of paying them for their services.

Such we regard as a proper interpretation of the bill of lading, down to and including the first stipulation. It shows the railroad lines, engaged in the transportation of the goods sued for, to have acted for the defendant, and justifies the instruction that those lines were, in this litigation, to be treated as the agents of the defendant.

The facts disclosed in the proof before the jury are entirely in harmony with this interpretation of the bill of lading, and justify the same conclusion of law. The goods were conveyed to Louisville in defendant's own car, and Louisville is by one of defendant's witnesses called the terminus of its line; but the manifest meaning of the witness, and the truth of the matter, is simply that defendant's car was transported to Louisville over railroad lines owned and operated by others with whom it

had contracted, and that its car stopped at that point.

At Louisville the defendant engaged the Louisville & Nashville Railroad Company to carry the goods thence to their destination—to complete its contract for it. This engagement, as the others, the defendant made on its own behalf, upon its own responsibility, and in full recognition of its undertaking and duty to deliver the goods at Clarksville. The nature of this engagement, and his appreciation of the import of this duty, is best shown by the language of defendant's agent and witness. He says: "Defendant had to forward those goods as any other shipper, and it had to pay whatever the Louisville & Nashville Railroad Company would charge, even if it had been the entire amount received from the shipper."

Dispatch companies and express companies have, since the earliest years of their existence, endeavored to put themselves without the rules of law applicable to common carriers, and to shield themselves against responsibility for the acts and omissions of other carriers whose conveyances they habitually use in the performance of their own contracts. Their efforts in this direction have been uniformly unsuccessful, because regarded by the courts as contrary to public policy.

"It has been attempted," says Mr. Lawson, "on the part of express, forwarding, and dispatch companies, to evade the responsibilities of common carriers, on the ground that they are not the

owners of the vehicles employed in the transportation, but this pretense has not been permitted in the courts. The names which they assume are regarded as immaterial, the duties which they undertake being the criterion of their liability. They are, therefore, held to the responsibility of common carriers, both where they are and where they are not interested in the conveyances by which the goods are transported. If an express company engaged to transport goods, sends them by a railroad company employed by it to perform the service, the railroad company becomes the agent of the express company, and the latter is liable to the consignor for its acts." Lawson on Contracts of Carriers, Sec. 233.

Mr. Hutchinson, speaking upon the same subject, says: "Because of this peculiarity in the employment of the means of conveyance afforded by others, the contention has been made by these companies that they were not common carriers, but transacted their business in the character of forwarders, and were not, therefore, liable for losses occurring from the negligence of those whom they thus employed. But this claim to exemption from the ordinary liabilities of common carriers has not been sustained by the courts. These subsidiary means of transportation have been held to be the mere agencies employed by such companies, for whose acts they are strictly responsible; and the carrier whose vehicle is thus used becomes likewise liable, upon principles of agency, to the owner of

the goods, according to the terms of his contract with his employer." Hutchinson on Carriers, Sec. 70.

The latter author, in the language just quoted, has reference to express companies, but in the second section following he says the same rules are applicable to dispatch companies in the same manner and for the same reasons. Here he says:

"Other carriers, under the names of dispatch companies, fast freight lines, and the like, have also come into existence, and conduct their business upon the same principles as express companies —that is, by the employment of the means of transportation furnished them by others, and to which, for the same reasons, the same rigid rule of responsibility as common carriers is applied." Hutchinson on Carriers, Sec. 72.

One of the earlier leading cases on this subject was decided by the Supreme Court of Massachusetts in 1867. The defendants there were express companies. Chief Justice Bigelow, in delivering the opinion of the Court, said:

"But it is urged in behalf of the defendants that they ought not to be held to the strict liability of common carriers, for the reason that the contract of carriage is essentially modified by the peculiar mode in which the defendants undertake the performance of the service. The main ground on which this argument rests is, that persons exercising the employment of express carriers or messengers over railroads and by steamboats can-

not, from the very nature of the case, exercise any care or control over the means of transportation which they are obliged to adopt; that the carriages and boats in which the merchandise intrusted to them is placed, and the agents and servants by whom they are managed, are not selected by them, nor subject to their direction or supervision; and that the rules of the common law regulating the duties and liabilities of carriers, having been adapted to a different mode of conducting business, by which the carrier was enabled to select his own servants and vehicles, and to exercise a personal care and oversight of them, are wholly inapplicable to a contract of carriage by which it is understood between the parties that the service is to be performed, in part at least, by means of agencies over which the carrier can exercise no management or control whatever.

"But this argument, though specious, is unsound. Its fallacy consists in the assumption that at common law, in the absence of any express stipulation, the contract with an owner or consignor of goods delivered to a carrier for transportation necessarily implies that they are to be carried by the party with whom the contract is made, or by servants or agents under his immediate direction and control. But such is not the undertaking of the carrier. The essence of the contract is, that the goods are to be carried to their destination, unless the fulfillment of this undertaking is prevented by the act of God or the public enemy. This, in-

deed, is the whole contract, whether the goods are
to be carried by land or water, by the carrier
himself, or by agents employed by him.    The con-
tract does not imply a personal trust, which can
be executed only by the contracting party himself,
or under his supervision, by agents and means of
transportation directly and absolutely within his
control.    *      *      *      *      *

"The truth is that the particular mode or agency
by which the service is to be performed does not
enter into the contract of carriage with the owner
or consignor.    The liability of the carrier at com-
mon law continues during the transportation over
the entire route or distance over which he has
agreed to carry the property intrusted to him."
*Ruckland* v. *Adams Express Co.*, 97 Mass., 120–130.

Some ten years later Mr. Justice Strong deliv-
ered a very instructive opinion on the same gen-
eral subject.    He said:

"The exception or restriction to the common
law liability introduced into the bills of lading by
the defendants, so far as it is necessary to con-
sider it, is 'that the express companies are not to
be liable in any manner or to any extent for any
loss or damage or detention of such package or its
contents, or any portion thereof, occasioned by fire.'
The language is very broad, but it must be con-
strued reasonably, and, if possible, consistently with
the law.    If construed literally, the exception ex-
tends to all loss by fire, no matter how occasioned,
whether occurring accidentally, or caused by the

culpable negligence of the carriers or their servants, and even to all losses by fire caused by willful acts of the carriers themselves. That it can be operative to such an extent is not claimed; nor is it insisted that the stipulation, though assented to by the shippers, can protect the defendants against responsibility for failure to deliver the packages according to their engagement, when such failure has been caused by their own misconduct, or that of their servants and agents. But the Circuit Court ruled the exception did extend to negligence beyond the carrier's own, and that of the servants and agents appointed by them and under their control; that it extended to losses by fire resulting from the carelessness of a railroad company employed by them in the service which they undertook — to carry the packages. And the reason assigned for the ruling was, that the railroad company and its employes were not under the control of the defendants. With this ruling we are unable to concur. The railroad company, in transporting the messenger of the defendants and the express matter in his charge, was the agent of somebody, either of the express companies, or of the shippers or consignees of the property. That it was the agent of the defendants is quite clear. It was employed by them and paid by them. The service it was called upon to perform was a service for the defendants, a duty incumbent upon them and not upon the plaintiffs. The latter had nothing to do with the employment. It was neither di-

rected by them, nor had they any control over the railroad company or its employees. It is true the defendants had also no control over the company or its servants, but they were its employers, presumably they paid for its service, and that service was directly and immediately for them. Control of the conduct of an agency is not in all cases essential to liability for the consequences of that conduct. If any one is to be affected by the acts or omissions of persons employed to do a particular service, surely it must be he who gave the employment. Their acts become his, because done in his service and by his direction. Moreover, a common carrier who undertakes for himself to perform an entire service, has no authority to constitute another person or corporation the agent of his consignor or consignee. He may employ a subordinate agency, but it must be subordinate to him, and not to one who neither employs it nor has any right to interfere with it.

"If, then, the Louisville & Nashville Railroad Company was acting for these defendants, and performing a service for them, when transporting the packages they had undertaken to convey, as we think must be concluded, it would seem it must be considered their agent. And why is not the reason of the rule that common carriers cannot stipulate for exemption from liability for their own negligence, and that of their servants and agents, as applicable to the contract made in these cases, as it was to the facts that appeared in the case

of *Railroad Company* v. *Lockwood?* The foundation of the rule is, that it tends to the greater security of consignors, who always deal with such carriers at a disadvantage. It tends to induce greater care and watchfulness in those to whom an owner intrusts his goods, and by whom alone the needful care can be exercised. Any contract that withdraws a motive for such care, or that makes more probable a failure to bestow extreme vigilance and caution upon the duty assumed, takes away the security of the consignors, and makes common carriers more unreliable. This is equally true, whether the contract be for exemption from liability for the negligence of agencies employed by the carrier to assist him in the discharge of his obligations, though he has no control over them, or whether it be for exemption from liability for a loss occasioned by the carelessness of his immediate servant. Even in the latter case he may have no actual control. Theoretically he has; but most frequently, when the negligence of his servant occurs, he is not at hand, has no opportunity to give directions, and the negligent act is against his will. He is responsible because he has put the servant in a place where the wrong could be done.

"It is quite as important to the consignor and to the public that the subordinate agency, though not a servant under immediate control, should be held to the strictest care, as it is that the carrier himself and the servants under his orders should be.

"For these reasons, we think it not admissible to construe the exception in the defendant's bills of lading as excusing them from liability for the loss of the packages by fire, if caused by the negligence of the railroad company .to which they confided a part of the duty they had assumed." *Bank of Kentucky* v. *Adams Express Co.*, 93 U. S. (3 Otto), 181.

This latter decision, which we regard as eminently sound in reason and in law, lays down the doctrine that controls the case before us.

There the undertaking on the part of the express companies was to carry certain money from New Orleans, La., to Louisville, Ky., and deliver it to certain banks in the latter city. The express messenger placed the packages of money in an iron safe, and placed the latter in an express car for transportation to destination. Thus situated, the money was transported over different lines of railroad, and while being carried over the Louisville & Nashville Company's line a trestle gave way in the nighttime, precipitating the express car, which was then burned, together with the money. The express messenger who accompanied the money was rendered insensible by the fall, and continued so until the destruction was complete.

Thereafter the banks sued the express companies in the United States Circuit Court for the loss of the money. To these suits the express companies interposed the stipulation against liability for loss

caused by fire, contained in their bills of lading, as a complete defense.

The Court charged the jury that such stipulation relieved the defendants from the loss, if they and their messengers were without fault or neglect; and, further, that it was not material to inquire whether or not the accident resulted from the negligence of the railroad company and its agents. In other words, the instruction was that the defendants were liable for the consequences of their own negligence only, and not for a loss brought about by the negligence of the railroad company. That instruction was disapproved, and a contrary doctrine announced in the language we have quoted somewhat at length.

There the contract was for through transportation, in which the defendants were obliged to use the vehicles and railroad lines of others; so it is here. There the defendants made their own employment of the railroad companies, and paid them for their services; so it is here. There the defendants produced a special contract, and by reason of it claimed that they were not liable for a loss proceeding from the negligence of the railroad company; so it is in the case before us. There the railroad company was held to be the agent of the defendants, and for the consequences of its negligence they were adjudged to be liable. We so hold and adjudge here.

A similar question was made before the Supreme

Court of Illinois in 1879. Goods intrusted to an express company for transportation were destroyed by fire while in transit upon a railroad. The Court said:

"But, admitting the conditions in the receipt were understandingly assented to by the shippers and became a binding contract between the parties, still defendant would be liable for the full value of the goods if the loss was owing to negligence on the part of the railroad company. An express company, choosing such a corporation to do its business, will be chargeable to the same extent for the negligence of the agent employed as if the contract was primarily with such agent, on the well-recognized principle that for culpable defects in carriages used by common carriers the law makes the carrier responsible." *Boscowitz* v. *Adams Express Co.*, Am. R., 197 (93 Ill., 523).

To the same effect is *Christenson* v. *American Express Co.*, 15 · Minn., 270. See also *Trans. Co.* v. *Oil Co.*, 63 Penn. St., 14.

It is to be observed that all these decisions from which we have made quotations were made in cases against express companies, whose messengers accompany their freight, and not in cases against dispatch companies, which have no such messengers. But the doctrine therein announced, as we understand it, is not made to depend in any sense upon the presence of the messenger. The holding is that the express company is responsible for the negligence of the other carrier upon whose line

the loss or damage may occur, not because the messenger is with the goods at the time, but because the other carrier is the agent of the express company.

Express companies and dispatch companies alike use the conveyances of others in the performance of their respective contracts with their respective customers; and they have precisely the same relation to those whose conveyances they so use. It is in this view that we regard those decisions applicable in this case, and it is for the reasons just stated that the text-writers class express companies and dispatch companies together.

This is not like the case of a shipment over several connecting lines of railroad, where the company first receiving the goods makes the contract for itself and others, and stipulates that liability shall fall alone upon the particular line in whose custody the goods may be when loss, if any, may be suffered. There the company first receiving the goods is in fact and by the contract a common carrier for only a part of the route—to the end of its own line; here the defendant is in fact and by the contract a common carrier for the whole route—from point of shipment to destination. There that company binds itself to the faithful performance of duty as a common carrier only while the goods may remain upon its line, and until delivered to the one next succeeding. To that extent and for that distance, but no farther, does it hold itself out to the consignor as a com-

mon carrier. For the balance of the route it acts only as agent of the other lines. Here the defendant holds itself out to the consignors as a common carrier for the whole route and in its own name; and for itself as principal, and not as agent of any one, contracts to furnish the necessary means of transportation upon every part of the entire journey. There the duty of transportation is divided into several parts, and each company stands as an independent carrier, bound only for safe carriage over its own line and prompt delivery to the next in succession, or to the consignees, and it is released from liability only while the goods may be in custody of other lines. Here the defendant undertakes the whole transportation upon its own responsibility, and, owning no railroad itself for any part of the route, it employs such lines of others as it sees fit to use. In making the contract with the consignors it acts for itself alone; and in making the necessary subcontracts with such railroad lines as it chooses to employ for assistance in the performance of its undertaking with the consignors, it again acts for itself and no one else. And, though it thus assumes for itself the duty of through transportation and selects its own agencies, it nevertheless attempts to exempt itself absolutely from all accountability for any loss that may occur during any part of the entire transit. There the company first receiving the goods and making the contract for itself and other companies leaves each answer-

able, under the law, for any loss upon its own line, the same as if no special contract were made, and stipulates only for exemption from liability for loss upon other lines, a liability which it could not in any event be compelled to assume against its will. Here the defendant leaves itself accountable for no loss whatever which may happen on any part of the journey, but, by throwing the whole burden upon the railroad lines, its agents, it seeks to relieve itself absolutely from even a possibility of responsibility, on its own part, for any loss on any line. If loss be occasioned upon the first line, or upon the last line, or upon any intermediate line, the result is the same to the defendant. It has positive exemption from accountability in each and every instance, if its stipulation be sustained. It assumes the duty and receives the compensation of a common carrier, but tries to throw off all responsibility attaching to that relation and character. There the contract is reasonable, and therefore lawful; here it is unreasonable, and therefore unlawful.

Manifestly, no one of several connecting lines of railroad would be permitted to contract against accountability for a loss upon its own line; and, for the same obvious reasons, this defendant, which makes such lines its agents and its own for the purposes of this transportation, as between it and the owner of the goods, should not be allowed to protect itself behind the stipulation presented in this case. Otherwise, all common carriers in the

land which use the conveyances of others in the transportation of their freight and performance of their contracts with their customers, may by agreement completely annihilate their common carrier liability, and revolutionize the wholesome rule of law hitherto prevailing upon that subject.

Owing to the vast scope and importance of the subject, the Courts and text-writers have devoted much time and space to the discussion of the power and right of connecting railroad companies to limit and extend their common law liability as common carriers within and beyond the *termini* of their respective lines.

All authorities are now agreed, we believe, in holding that the first of a number of successive companies rendering service in the carriage of freight between distant points, may so bind itself to deliver goods beyond the *terminus* of its own line as to become responsible for their safe carriage through the entire journey; but with respect to what is necessary to constitute such a contract the English and American authorities are quite inharmonious. The English rule is that the receipt of goods marked for a given point, without a positive limitation of responsibility, affords *prima facie* evidence of an undertaking on the part of the carrier to safely transport them to their destination, whether within or beyond the limits of its own line; while in America most of the Courts regard each company as liable in the common carrier capacity only for the extent of its own line, unless

there be a special contract to the contrary. The latter may be stated to be the American rule, though some of the States, Tennessee among the number, have adopted the English rule as more consonant with sound reason and public policy. Schouler's Bailments and Carriers, Ed. 1887, Secs. 593 to 598, inclusive; Lawson on Con. of Car., Secs. 235 to 240, inclusive; Redfield on Carriers, Secs. 190 and 197; Hutchinson on Car., Sec. 145 to 149, inclusive, and Secs. 151, 152; *L. & N. R. R. Co.* v. *Campbell,* 7 Heis., 253; *R. R. Co.* v. *Rogers,* 6 Heis., 143; *R. R. Co.* v. *McElwee, Ib.,* 208; *Railroad Co.* v. *Weaver,* 9 Lea, 38.

It is likewise well settled that a common carrier is not bound in law to transport goods beyond its *terminus,* and that it may, therefore, lawfully stipulate that it shall not be liable for loss after the goods have passed beyond the limits of its own line and upon the line of another. Schouler's Bail. and Car., Sec. 603; Lawson on Con. of Car., Sec. 236; *R. R. Co.* v. *Brumley,* 5 Lea, 401; *Dillard* v. *R. R. Co.,* 2 Lea, 288; 9 Bax., 188; 7 Heis., 257.

But it is readily seen that this case is not controlled by either of those doctrines. It is not the case of a limitation of liability to the line of the contracting carrier, nor of an extension of responsibility beyond the limits of that line. On the contrary, it is the case of a carrier for the whole route attempting to relieve itself from liability upon any part thereof because it has no convey-

ances of its own, and is compelled to use those of others in the performance of its contract of shipment.

Declining to lend our assistance or approval to such an effort, we hold that the defendant, notwithstanding its stipulation, is responsible for the consequences of the negligence, if any, of the railroad companies which it employed in the transportation of the goods sued for, such companies being, to all intents and purposes, its servants or agents, as between it and the plaintiffs.

There is no positive proof that the loss resulted from the negligence of any one. But such proof is not necessary to entitle plaintiffs to a recovery; for, "where goods in the custody of a common carrier are lost or damaged, the presumption of law is that it was occasioned by his default, and the burden is upon him to prove that it arose from a cause for which he was not responsible." Lawson on Con. of Car., Sec. 245; Hutchinson on Car., Sec. 764; Schouler's Bail. and Car., Sec. 439; 9 Bax., 188; 2 Lea, 296; 63 Penn. St., 14.

The defendant assigns, as additional error, the action of the Court below in giving to the jury certain instructions, and in refusing certain requests for instructions, with respect to what was necessary to constitute the bill of lading a contract between the parties.

Referring to the bill of lading and the stipulation therein, which we have already quoted and considered, his Honor, the Trial Judge, to the jury said:

"It is not a contract between the parties, unless you find that there is evidence establishing that plaintiffs agreed to that stipulation.

"Before this stipulation in the bill of lading would be binding on the plaintiffs, it would be necessary for the defendant to show that plaintiffs' attention had been called to it, and that they expressly or impliedly assented to it. The fact that they accepted the bill of lading from the defendant, kept possession of it without objection, and introduced it in evidence, would not be sufficient, in my opinion."

This charge is in accord with the uniform holding of the Supreme Court of Illinois, which requires the carrier to show affirmatively that the restrictions of liability claimed by it were in fact known and assented to by the shipper. *Boscowitz* v. *Adams Express Co.*, 93 Ill., 194; 71 Ill., 458; 42 Ill., 89. But it is contrary to the great weight of American and English decisions, which hold that the fair and honest acceptance of a bill of lading without dissent raises a presumption that all limitations contained therein were brought to the knowledge of the shipper, and agreed to by him. 3 Wood's Railway Law, note 2, pp. 1577 and 1578; Lawson on Con. of Car., Sec. 102; Hutch. on Cor., Sec. 239; Schouler's Bail. and Car., Secs. 464, 465; 5 Lea, 404; 2 Lea, 294.

The requests for instruction were in substantial conformity to the rule as announced by this Court in the last two cases mentioned.

This action of the Court in giving the jury improper instruction upon the one hand, and in refusing to give proper instruction upon the other, would ordinarily be fatal, and afford ground for reversal; but it is not so in this case, because the error is immaterial. The matter in hand was the stipulation through which the defendant sought to protect itself against liability. It has already been seen that the Court was right in telling the jury that such stipulation, though the contract, was invalid, because unreasonable and against public policy. Therefore, any error with reference to what was necessary to make it a contract was clearly immaterial. Being immaterial, a reversal cannot be predicated upon it. 3 Head, 331; 5 Sneed, 587; 1 Lea, 664.

Affirmed.

### DISSENTING OPINION.

The following dissenting opinion was delivered:

FOLKES, J. This is an action brought by the plaintiffs against the defendant to recover the value of a shipment of merchandise from New York city to Clarksville, Tenn.

The proof shows that the defendant company received the goods in New York, and executed therefor a bill of lading containing the marks on the package addressed to Clarksville, and embracing the following language:

"Ninety-six cents per 100 lbs., to be forwarded to Clarksville under the following conditions: It being expressly understood and agreed that, in consideration of issuing this through bill of lading, guaranteeing a through rate, the Merchants' Dispatch Transportation Company reserves the right to forward said goods by any railroad lines between point of shipment and destination.    *    * The Merchants' Dispatch Transportation Company, or carriers over whose line the goods are transported, shall only be responsible—"    *    *    * Then follows the several and usual—not to say invariable at thisday—clauses limiting the liability of the carrier, none of which it is necessary to notice except the following:

"It is further stipulated and agreed that, in case of any loss, detriment, or damage done to or sustained by any of the property herein receipted for during such transportation, whereby any legal liability or responsibility shall or may be incurred, that company alone shall be held answerable therefor in whose actual custody the same may be at the time of the happening thereof."

The defendant company carried the goods safely and without delay to Louisville, Ky., the terminus of its own line, in its own cars, and there delivered same to the Louisville & Nashville Railroad, which was the most direct route to Clarksville, to be by the last named company carried to the point of destination.

There is no proof showing how the goods were

lost or destroyed. It merely appears that the particular package sued for was not delivered to the consignee at Clarksville. While it is certain from the proof that the loss occurred on the Louisville & Nashville Road, it does not appear how such loss was brought about, whether by fire, robbery, or otherwise, with or without negligence on the part of said Louisville & Nashville Railroad Co.

The record shows that there was no kind of partnership arrangement between the defendant company and the Louisville & Nashville Railroad Co. The latter had no share or participation in the profits of the carriage from New York to Louisville, and the former no share or participation in the freight from Louisville to Clarksville. What is said about having to pay the succeeding lines, whatever they might charge is shown to have reference to the fact that the defendant had guaranteed the through freight, and that, so far as the shipper is concerned, the defendant would have to satisfy the freight charge of connecting lines.

Verdict and judgment for the plaintiff. Motion for new trial overruled, and appeal in error to this Court.

The error complained of is in the charge of the Court as given and for refusal to charge as requested.

Notwithstanding the bill of lading, the Trial Judge opened his charge to the jury by saying:

"It is admitted that the defendant received the goods in New York from the plaintiff's agent;

then I charge you it was its duty to deliver them to the plaintiffs at Clarksville. Nothing would excuse them except the act of God or the public enemy, and in this case it was not pretended there was such act of God or the public enemy."

The statement of the law as there ·given, when taken in connection with the undisputed facts in the case, was well calculated to mislead the jury.

Continuing, the judge said:

"The defendant says it turned the case of goods over to the Louisville & Nashville Railroad Co. at Louisville, as its line terminates there; but, if it did so, the Louisville & Nashville Railroad Co., under the bill of lading or contract, was the agent of the defendant, and if the loss was the result of the negligence of that company or its servants or agents, then the defendant would be liable."

This is clearly erroneous. How it can be said or supposed that the Louisville & Nashville Railroad Co. were the agents of the defendant company does not appear. Certainly, under the proof in the record, if there was any relation of principal and agent between the defendant company and the Louisville & Nashville Railroad Co., the Louisville & Nashville Co. was the principal and the defendant company was its agent, authorized to make a contract binding it as to rate of freight, and to safely carry from the point of contact with defendant company to the point of destination. The railroad company was to carry on its own account and upon its own responsibility, for its

own sole compensation; the defendant company being authorized by its contract with the shipper to select the route beyond its terminus, but, *when selected,* the railroad became the carrier for the shipper, and not agent for the defendant company selecting it.

But, before discussing this aspect of the case, let us see further into the charge. Continuing, the judge said:

"The defendant relies upon the following stipulation in the bill of lading." Here follows so much of the bill of lading relating to exemption for loss occurring beyond its line as we have already quoted. The judge adds: "That is in the bill of lading in fine print, and the defendant says that as the loss, if it occurred at all, occurred after it passed from its hands to the Louisville & Nashville Railroad, this clause relieves it from liability. Such a stipulation might be binding on the shipper or consignee if there was a contract to that effect signed or mutually assented to by both parties; but here there is no contract signed by the shipper or consignee. There is nothing but a bill of lading signed by the agent of the defendant. It is not a contract between the parties unless you find that there is evidence establishing that the plaintiffs agreed to that stipulation. Before this stipulation in the bill of lading would be binding on the plaintiffs, it would be necessary for the defendant to show that plaintiffs' attention had been called to it, and that they expressly or

impliedly assented to it.   The fact that they accepted the bill of lading from the defendant, kept possession of it without objection, and introduced it in evidence, would not 'be sufficient in my opinion."

This is manifest error.   Directly the contrary to this was held by this Court in *Railroad* v. *Brumley*, 5 Lea, 401, following other cases in this State. Indeed, no one undertakes to defend this part of the charge, it being contended that it becomes immaterial in view of what follows in the charge.

We are not prepared to admit that such manifest error could, in any event, be permitted to pass as immaterial.   The portion of the charge which it is claimed renders the above error innocuous follows immediately upon what has just been quoted, and is this:

"But, whether that be so or not, in my opinion that stipulation is rendered void by the other stipulation which preceded it, to the effect that *the defendant reserved the right to forward said goods by any railroad line between point of shipment and destination;* for by that stipulation it made the forwarding carrier *its* agent, and the law, on grounds of public policy, could not allow it to stipulate exemption from liability for the consequences of the negligence of its agents, or their failure to do their duty."

We have quoted thus at length so that the entire charge, in any manner relating to the bill of lading, might be seen.

How the portion last quoted can be said to cure the former, we are at a loss to see, unless it be upon the idea that two wrongs make a right, or the greater error swallows up the smaller; for, in my opinion, the error last quoted is greater than the former. For cases may be found in one or more of the other States to sanction the first proposition as to mutuality of contract being manifested by the signature of the shipper, but we know of no case and no principle of law that justifies the latter proposition.

It is too well settled now to admit of controversy that a carrier receiving freight for a point beyond its terminus may stipulate for exemption from liability for loss, however occurring, on another and distinct line, where the carriage to point of destination renders necessary the employment of several lines, and where a reduced or a guaranteed through rate is the consideration for such stipulation. *Railroad* v. *Brumley*, 5 Lea, 401; *Dillard Bros. & Coffin* v. *L. & N. R. R. Co.*, 2 Lea, 288; *L. & N. R. R.* v. *Campbell & Richards*, 7 Heis., 257; *M. & C. R. R.* v. *Holloway*, 9 Bax., 188. The last case, holding the doctrine as above stated, adjudges also that the burden of proof is on whichever road may be sued to show that the loss did not occur while on its road. When this is shown, it is a complete defense. *Ill. Cent. R. R. Co.* v. *Frankenberg*, 54 Ill., 88; *Evans. & C. R. R.* v. *Androscoggin Mill*, 22 Wall., 594; *Taylor*

v. *Little · Rock, Miss. River & Texas R. R.,* 32 Ark., 393.

But it is said that while this is so as to one railroad company receiving freight to be shipped beyond its road, the rule does not apply to a dispatch company or an express company. To this we answer that upon principle there can be no such distinction. The rule, as announced, is one applied to common carriers; for as to a private carrier, he can make his own contract, and always could, just as freely as any' other private individual could make any contract not illegal.

The question originally was, Could a *common carrier* be allowed to stipulate for an exemption from the common law liability attaching to it as such; and, as we have seen, it has been answered in the affirmative. As a question of public policy it was viewed by the Courts, and the privilege accorded to make such stipulation. It has nothing to do with the question of negligence or fraud, but looks to having the loss, and consequent right of recovery, fall upon the particular road *having charge of the freight at the time of the loss.*

Now, who can say that a dispatch or express company is not a common carrier, and as such to be onerated with the same burdens, and to enjoy the same privileges, as other common carriers. Express companies are held to be common carriers in *Owell* v. *Adams Express Co.* by this Court, in an unreported case, but published in 1 Cent. L. J., 186, and cited approvingly by Judge Cooper in 2

Lea, 288. They are held as common carriers in *Southern Express Co.* v. *Wormack,* 1 Heis., 265.

Do not the considerations of public policy which lead to the permission of restricted liability as to railroads. apply with equal effect to dispatch and express companies? These considerations were forcibly expressed by this Court in the Dillard Bros. case: "Courts must have regard for the great interest of commerce, upon which so much of our modern civilization depends." And, as said by the Supreme Court of the United States, allowing such restricted liability to be contracted for "enables the carrying interest to reduce its rate of compensation, thus proportionally relieving the transportation of produce and merchandise from some of the burdens with which it is loaded."

But it is said the case of the *Bank of Kentucky* v. *Adams Express Co.,* 93 U. S. 177, established a different rule for express companies.

In our opinion there is nothing in that case at war with the views we have expressed. The case did not present the question as to right to stipulate for a loss to fall upon some connecting line, but stipulated for exemption from loss *by fire* anywhere on any line. The learned Judge, on page 181 of the opinion, says the stipulation there considered "extends to all loss by fire, no matter how occasioned, whether occurring accidentally or caused by the culpable negligence of the carrier or its servants, and even to losses by fire caused by willful acts of the carriers themselves."

No such case here. The case is decided upon the ground that the express company had contracted to carry all the way. The money lost by fire was in the actual custody and charge of the express messenger, the company's chosen agent. It was never delivered to the railroad, the negligent destruction of whose bridge caused the burning, but remained in the manual possession of the express company, who paid the railroad to carry for it, not for the shipper. It was a stipulation for exemption for its own negligence, not for exemption from the negligence of another and different carrier, to whom it was authorized to deliver the goods for the common employer. On page 186 the Court say in that case:

" We do not deny that a contract may be made that will put a common carrier on the same footing with a private carrier for hire, as respects his liability for loss caused by the acts or omissions of others."

This case does not decide that the express company, who is by contract authorized to *deliver* freight to another express company, or to a railroad, after the terminus of the express line is reached, may not stipulate for exemption from loss caused by such other express company or railroad.

Well, then, if it be true that one railroad can make such contract for exemption when it has delivered to another railroad, why not one dispatch company have the same privilege?

But it is said that the fact that the first car-

rier reserves the right to select the succeeding carrier makes such succeeding carrier the former's agent.

Where is the authority or the principle which justifies such contention?

The first carrier had the right to select the second without any express reservation. The fact that the bill of lading called for a point beyond his terminus, and designated no second or intermediate line, carried with it, by necessary implication, the right on the part of such carrier to select the succeeding carrier, he being liable only for good faith and reasonable diligence in selecting a prudent, safe, and efficient succeeding carrier.

Now, the fact that the contracting carrier saw fit to avoid any question of liability, as for a deviation or otherwise, in the selection of such succeeding carrier, does not make the latter his agent any more than if he had selected such carrier without such stipulation.

A, as agent for B, may be empowered to select another agent *for B* without such other agent becoming A's agent. Though designated by A under the power of attorney, he, when selected, is as much the agent of B as if B had selected him in person.

That an express company is accorded the privileges of a railroad company, or any other common carrier, with reference to its right to stipulate for limited liability *under like circumstances*, is shown by the opinion of this Court in *Southern Express*

*Co.* v. *Glenn & Sons*, 16 Lea, 472, where it is held that such company may stipulate for exemption from liability for loss of money or goods intrusted to it for carriage, unless the claim therefor shall be made in writing within thirty days from the date of the contract.

Every consideration which is urged in the opinion of the majority of the Court as to the impolicy of allowing the transportation company to avail itself of the limited liability claimed in the contract at bar, applies with equal force to the inexpediency of allowing the exemption in the 16th Lea case.

None of the cases cited in the opinion of the majority, in my judgment, warrant the distinction sought to be made. The result reached is this: A railroad company, when it is the first and contracting company, will be allowed, for consideration of reduced or guaranteed through freight, to limit its liability to its own line where it has contracted for a point beyond. A dispatch, transportation, or fast freight company, though held to be in all respects as much of a common carrier, will not, under identically the same circumstances, be allowed the same privilege where it reserves the right—that it and the railroad both had without such reservation—to select one of several competing lines that meet it at the terminus of its own lines.

To such a conclusion I cannot assent.

The very same considerations of public policy— the reduction of freights and the expedition of

delivery—which lead the courts to permit the limited liability in the one case would suggest the like privilege in the other. It has nothing to do with the impolicy of allowing carriers to contract for exemption from liability for the negligence of itself, or agents or employes. Such exemption is not to be allowed to either the railroad or the transportation company, and is not contended for nor involved in the case at bar; but the question is, Is there any difference between the right to make such a contract by a fast freight line and the same right in a railroad company?

The only difference between the two is that the railroad company owns the track and the cars, while the freight companies own the cars only; both are held to be common carriers; both make identically the same form of contract with the shipper; both have to turn over goods to connecting lines when the terminus of their own is reached.

I must plead guilty to a total inability to discover the rule or the reason for any different measure of responsibility to be applied in the one case and not in the other. I can readily see where some confusion may appear to exist, growing out of the language used *arguendo* in some of the reported cases, where express companies have sought to claim exemption from the liability of common carriers by assuming to be forwarders merely. When such companies made this effort, the courts were prompt and emphatic in holding

that neither express companies nor dispatch companies would be allowed to claim to be free from the same burdens that the law placed upon other common carriers. But when they were held to be a common carrier, and onerated with its burdens, they were given all its privileges under like circumstances.

I say *under like circumstances;* for, of course, when an express company sends its messenger along, who retains possession and control of the package, it will not be heard to say that it is not a common carrier to the end of the journey simply because it uses the tracks or the cars of other companies.

All the cases referred to in the majority opinion recognize the dispatch companies as common carriers in the fullest sense of the term, and make no such distinction as is established here. They recognize the right of such companies to make the same contracts and apply the same rules and principles in determining their liability—no more and no less—that is applied to ordinary railroad companies. *Robinson Bros. & Gifford* v. *The Merchants' Dispatch Transportation Co.,* 45 Iowa, 470; *Stewart* v. *The Merchants' Dispatch Transportation Co.,* 47 Iowa, 229; *Bancroft* v. *Merchants' Dispatch Transportation Company,* 47 Iowa, 262; *Merchants' Dispatch Transportation Co.* v. *Bolles,* 80 Ill., 473; *Merchants' Dispatch Transportation Co.* v. *Leysor,* 89 Ill., 43. In this case the goods were to be transported from New York to Alton, Ill., and it

was conceded that this company could make the same stipulation that other common carriers make as to fire exemption, provided the contract was expressly agreed to by the shipper—applying to it the same rule that is in force in that State with reference to railroad companies.

The authority cited for the distinction that is sought to be made here is based entirely upon express cases, where the messenger accompanied the goods. That such was the case of *The Bank of Kentucky* v. *Express Co.*, 93 U. S., has already been shown.

To the same effect exactly is the case of *Buckland and Another* v. *Adams Express Co.*, 97 Mass., 120, so extensively quoted in the opinion of the majority. There was a contract by the express company to carry from Springfield, Mass., to Vicksburg, Miss. Loss was occasioned by explosion on a Mississippi River steam-boat. The effort was to claim the restricted liability of a forwarder only, and, failing in this, to rely on a contract for limited liability as carrier made with a person assuming to be an agent of the consignee.

The points decided were:

*First*—That where an express company assumes *entire possession and control* of the goods *to the point of destination,* the liability is that of a common carrier to the end of the route, although it may style itself a forwarder only.

*Second*—That the facts of the case do not show that the consignee assented to any restriction on

the liability of the express company as a common carrier.

Bigelow, Ch. J., in delivering the opinion in that case expressly recognizes the right of such a carrier to stipulate for limited liability in proper cases. He says:

"If a person assumes to do the business of a common carrier, he can, if he sees fit, confine it within such limits that it may be done under his personal care and supervision, or by agents whom he can select and control; but if he undertakes to extend it further, he must either *restrict his liability by a special contract*, or bear the responsibility which the law affixes to the species of contract into which he voluntarily enters."

Again he says:

"It is not a case where the agreement between the parties was that the merchandise was to be delivered over by the defendants to other carriers at an intermediate point, thence to be transported over an independent route to the point of destination," etc.

Yet, this and the Bank of Kentucky case are made the basis for the conclusion reached by the majority of my brothers, supplemented by the case of *Christenson* v. *American Express Co.*, 15 Minn., 270, which is identical with the other two, and

in which the Court emphasizes the fact that "a messenger in the employ of the defendants accompanied the goods as they are being transported, to take general charge of the same, and to deliver to its proper local agents."

If these decisions rest not on the fact that the express companies assume and contract themselves to carry over the whole route, as shown by the use of their own messengers, who have and assert always a . personal custody of the goods, then the learned judges who have rendered the opinions have been singularly infelicitous in the use of language, as shown by the quotations which we have made.

The opinion of the majority assumes that the distinction between the right of a railroad company and of an express company (or dispatch company) to make such a contract as is adjudged invalid here, is to .be found in the fact—quoting from the opinion—"that express companies and dispatch companies alike *use the conveyances of others* in the performance of their respective contracts;" and therefore it is that "the other carrier becomes the agent of the express company." This manifestly cannot be the basis of the distinction, for the self-evident reason that a *railroad company*, issuing a through bill of lading to a point beyond its own terminus, "*uses the conveyances of others* in the performance of its contract." If this fact is to make "*the other carrier the agent*" of the first in the one case, it would produce the same

result in the other. Surely a distinction that is not based upon a difference can hardly commend itself as a good distinction.

We assert again that a reading of the cases will show that the pivotal point of the decisions referred to is the personal custody of the goods by the express messengers.

Believing that it is of great public concern that a contract for limited liability beyond the line of the first carrier, where there is a through freight guaranteed, should be permitted, where shippers see fit voluntarily to make such contracts, and being unable to see any reason why the same privilege should not be accorded the fast freight lines, which were born of the necessities of commerce and rapid transit, I am constrained to dissent from the opinion of my brethren.

Such companies are used to a very large extent in the commerce of the country, and are esteemed of such great value to the merchants engaged in such lines of business as require cheap, quick, and safe delivery of goods, that I regard the result of the conclusion reached by the majority as calculated to hamper the enterprise and business of the merchants of this State, placing them at a disadvantage with the merchants of other States.

To attempt to protect is not unfrequently to cripple. The class who contract with these fast freight companies are generally able to protect themselves; and if they need protection from any

supposed improvidence in arranging for transportation, they certainly need it more with reference to the railroads of the country than with these fast freight lines. And the same rule should be applied to railroads; but so long as railroads are allowed to make such contracts, I will insist that these freight lines should enjoy the same privilege.

That they are entitled to be put on the same footing with railroads with reference to their contracts as common carriers, see *Insurance Co.* v. *Railroad Co.*, 104 U. S., 146, where the Erie & Pacific Dispatch contracted for shipment of goods from St. Louis, Mo., to London, Eng., its bill of lading containing the same stipulation, in so many words, as is in the bill of lading in case at bar, as to loss being placed only on the company in whose actual custody the goods were at the time of the loss. The question decided was, that the first railroad company was not liable for loss by fire in warehouse of a subsequent connecting line. But it was not placed on the bill of lading, as the Court found other grounds upon which to rest its decision; and there is nothing adjudged in this case that is in point with the case at bar. But I refer to it merely to show that the Erie & Pacific Dispatch Co. was treated throughout as entitled to all the privileges of a special contract that are given railroad companies, including the right to select the intervening carriers, the Court, on pages 154–5, saying:

"If the bill of lading constituted the contract of transportation, and the defendant is to be regarded as one of the connections of the dispatch company, then manifestly the law would be for the defendant; for the bills of lading expressly limit responsibility for loss to that carrier in whose actual custody the cotton might be when lost or destroyed."

Analogous cases might be multiplied, but it seems needless to pursue the subject further.

In my opinion the judgment in this case should be reversed, and cause remanded for new trial.